# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-02411-NYW

DREW MILLER,

    Plaintiff,

v.

INSTITUTE FOR DEFENSE ANALYSES, *a Delaware Non-Profit Corporation*,

    Defendant.

## ORDER

Magistrate Judge Nina Y. Wang

    Pending before this court is the Opposed Motion for Protective Order ("Motion") filed by Defendant Institute for Defense Analyses ("Defendant" or "IDA") [#27, filed April 4, 2018], which is opposed by Plaintiff Drew Miller ("Plaintiff" or "Dr. Miller"). IDA urges this court to enter a blanket Protective Order, under which it can designate discovery materials as "Confidential," and Dr. Miller is permitted to challenge such designations. [#27-1]. The court held a Status Conference with respect this issue on April 13, 2018, and requested briefing on the issue. [#30]. Dr. Miller filed an Opposition [#31] and IDA filed a Reply [#32]. Upon review of the record before it, this court finds that oral argument will not materially assist in the resolution of the Motion. Having been fully advised of the premises, this court hereby **GRANTS IN PART and DENIES IN PART** the Motion.

## BACKGROUND

    The court has described the background of this case in prior Orders, *see* [#34], and, therefore, it will limit its discussion herein to only the facts most relevant to the pending Motion. On October 6, 2017, Dr. Miller initiated this action asserting several federal claims against IDA

for: retaliation under the False Claims Act, 31 U.S.C. § 3730(h)(1) ("Claim I"), "Defense Contractor Whistleblower Retaliation" under 10 U.S.C. § 2409 ("Claim II"), and non-payment of earned wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206, 207 ("Claim III"); he also asserts state law claims for: wrongful discharge in violation of public policy ("Claim IV"), termination for lawful off-duty activity under Colo. Rev. Stat. § 24-34-402.5 ("Claim V"), and unlawful prevention of an employee's political participation under Colo. Rev. Stat. § 8-2-108 ("Claim VI"). *See* [*id.*]. On January 30, 2018, Defendant filed its Answer to Claims I, II, IV–VI, and moved to dismiss Claim III. *See* [#15; #16]. By Order dated May 29, 2018, this court granted the Motion for Partial Dismissal, dismissing Plaintiff's FLSA claim but permitting Plaintiff to file a Motion to Amend his Complaint. [#34]. By letter docketed June 14, 2018, Plaintiff declined to seek amendment of Claim III. [#35]. Accordingly, two federal claims and two state law claims relating to Dr. Miller's termination from IDA remain.

The court entered a Scheduling Order on February 7, 2018. [#20]. During a Status Conference held before the court on April 13, 2018, Defendant indicated its intent to seek a Protective Order, and Dr. Miller objected to any Protective Order. [#30]. The court ordered briefing, which followed.

**LEGAL STANDARDS**

Rule 26(c) of the Federal Rules of Civil Procedure provides that a court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. Fed. R. Civ. P. 26(c). The party seeking a protective order bears the burden of establishing its necessity, *Centurion Indus., Inc. v. Warren Steurer & Assoc.*, 665 F.2d 323, 325 (10th Cir. 1981), but the entry of a protective order is left to the sound discretion of the court, *see Rohrbough v. Harris*, 549 F.3d 1313, 1321 (10th Cir. 2008). As part of the exercise

of its discretion, the court may also specify the terms for disclosure. Fed. R. Civ. P. 26(C)(1)(B). The good cause standard is highly flexible, having been designed to accommodate all relevant interests as they arise. *See Rohrbough*, 549 F.3d at 1321.

There are at least three kinds of protective orders that courts have utilized to limit discovery or the dissemination of information: (1) particular protective orders; (2) blanket protective orders; or (3) umbrella protective orders. *See Gillard v. Boulder Valley School Dist. RE-2*, 196 F.R.D. 382, 385–86 (D. Colo. 2000). At one end of the spectrum are particular protective orders that are directed at specific, identified information. *Id.* At the other end of the spectrum umbrella protective orders designate all discovery as protected, without any prior review by the court or the parties. *Id.* Blanket protective orders lie in the middle and place the burden upon the parties to review and designate documents as protected. *Id.* A receiving party can object to the designation, and to the extent that the parties cannot resolve such objection, they may seek judicial intervention. *Id.*

Because Dr. Miller is proceeding *pro se*, this court liberally construes his filings, but it cannot act as his advocate. *Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008). While the court will not construct arguments or theories for the plaintiff in the absence of any discussion of those issues, *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991), to the extent that Dr. Miller has articulated an appropriate argument even in non-legal terminology, this court considers it herein.

**ANALYSIS**

In this case, IDA seeks a blanket protective under which it can designate discovery, while Dr. Miller objects to any protective order on multiple grounds: (1) IDA is quasi-governmental and, accordingly, should not be considered a private corporation; (2) Dr. Miller is proceeding *pro*

*se*, and he would like to share the discovery with nonparties, including organizations dedicated to assisting whistleblowers; and (3) as a *pro se* litigant, he does not have the experience or bandwidth to seek relief from the court each time he seeks to share a document.

I.   **IDA's Status**

In his Complaint, and admitted by Defendant, IDA is a Federally Funded Research and Development Center ("FFRDC"), a public-private partnership that conducts research for the U.S. government. In that capacity, it performs work pursuant to numerous contracts with the Department of Defense. [#1 at ¶ 24, #15 at ¶ 24]. FFRDCs are authorized by 41 U.S.C. § 405(a), 48 C.F.R. § 35.017, and Federal Acquisition Regulation ("FAR") § 35.017. *Vallier v. Jet Propulsion Lab.*, 120 F. Supp. 2d 887, 891–92 (C.D. Cal. 2000). FAR § 35.017(a)(2) defines the role of an FFRDC as follows: "FFRDC's enable agencies to use private sector resources to accomplish tasks that are integral to the mission and operation of the sponsoring agency." *Id.*

In some instances, courts have undertaken a factual analysis to determine whether a FFRDC is standing in the shoes of a governmental agency. *See United States v. Jianyu Huang*, No. CR 12-1246 WJ, 2014 WL 12796741, at *2 (D.N.M. Mar. 6, 2014). The fact that IDA is a FFRDC, however, does not necessarily transform it into a federal government agency or its employees into federal employees. *Id.* In unrelated contexts, courts have described IDA as "a private, nonprofit organization engaged in analyzing high level management problems, primarily for the Department of Defense," *Smith v. Flax*, 618 F.2d 1062, 1063 (4th Cir. 1980), and a "non-governmental agency," *In re Agent Orange Prod. Liab. Litig.*, 98 F.R.D. 522, 531 (E.D.N.Y. 1983). This court found no case law addressing whether, for the purposes of discovery in civil litigation, FFRDCs in general, or IDA specifically, is considered a federal agency. But even if IDA was considered a federal agency or an arm of the Department of Defense (which are not

conclusions that this court is willing or permitted to make on the record before it), not all information provided to or held by a federal agency is publicly available. *See, e.g.*, 5 U.S.C. § 552b (setting forth certain exemptions to the Freedom of Information Act ("FOIA")). Indeed, courts have entered blanket protective orders to facilitate production of documents involving federal agencies. *See, e.g.*, *Roythberg v. United States*, No. 15-CV-5560(ENV)(MDG), 2016 WL 1559151, at *1 (E.D.N.Y. Apr. 18, 2016) (noting that it had entered a blanket protective order to expedite discovery and then vacating it). Accordingly, this court concludes that IDA's status as a FFRDC, standing alone, does not preclude a protective order.

## II.     Sharing Discovery

As discussed above, this court interprets Dr. Miller's papers liberally because he is proceeding *pro se*. But *pro se* litigants are bound by the same Federal Rules of Civil Procedure and substantive law as represented parties. *See Dodson v. Bd. of Cty. Comm'rs*, 878 F. Supp. 2d 1227, 1236 (D. Colo. 2012). On one hand, a cornerstone of the American justice system is transparency. "Judges have a responsibility to avoid secrecy in court proceedings because 'secret court proceedings are anathema to a free society.'" *Boatman v. United States Racquetball Ass'n*, 33 F. Supp. 3d 1264, 1277 (D. Colo. 2014) (quoting *M.M. v. Zavaras*, 939 F.Supp. 799, 801 (D.Colo.1996)). On the other hand, pretrial proceedings are not public components of a civil trial. The United States Supreme Court has held that "[a] litigant has no First Amendment right of access to information made available only for purposes of trying his suit." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32 (1984). A court in this District has previously observed that a party has no right to make unrestricted disclosure of information obtained through discovery. *See Gillard*, 196 F.R.D. at 387. And this court has previous held that a party's desire to unilaterally share discovery documents with third parties is insufficient, without more, to defeat an otherwise

5

appropriate protective order. *Blatchley v. Cunningham*, No. 15-CV-00460-WYD-NYW, 2015 WL 9434459, at *3 (D. Colo. Dec. 24, 2015).

**III. Appropriate Scope of Protective Order**

Finally, Dr. Miller argues that as a *pro se* litigant he does not have the experience nor the bandwidth to come to court and challenge the designation of each document he wishes to share and/or file publicly. Framed another way, Plaintiff is concerned that IDA will inappropriately designate documents under a protective order and the burden will then shift to Plaintiff to de-designate them. In reviewing the proposed protective order, the court respectfully disagrees that Plaintiff will be overly burdened by having to de-designate confidential information. Before a document may be designated as "Confidential," it must be reviewed by "a lawyer of the designating party who will certify that the designation as 'Confidential' is based on a good faith belief that the information is confidential or otherwise entitled to protection." [#27-1 at 2]. Separately, under Rule 26(g) of the Federal Rules of Civil Procedure, all Parties are required to certify that their disclosures are complete and correct as of the time it is made; that any response is consistent with the Federal Rules of Civil Procedure and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or establishing new law; that the designation in this case is not interposed for any improper purpose; and it is neither unreasonable or unduly burdensome or expensive, considering the proportionality factors set forth in Rule 26(b)(1). Fed. R. Civ. P. 26(g). Under the proposed protective order, once Dr. Miller raises an objection to the designation of "Confidential" information, the burden falls to IDA as the designating party to file an appropriate motion. [*Id.* at 3]. In addition, the designating party, presumably IDA, bears the burden of establishing that good cause exists to designate the subject information as "Confidential." [*Id.* at 3–4]. Failure to properly follow this

procedure will result in the disputed information losing its "Confidential" designation. [*Id.* at 4]. While this court cannot preemptively determine whether IDA will utilize appropriate designations in all instances, the court notes that it appears that IDA has produced documents already without any confidentiality designations, *see, e.g.*, [#23-1 at 1–9], and nothing in the record thus far indicates that IDA will abuse such designation.

Of course, even with procedural controls in place, it is appropriate for this court to consider whether the proposed protective order sufficiently defines the kinds of documents that might be designated as confidential and, accordingly, the court turns to these substantive considerations. The proposed protective order defines "Confidential" information as documents, material, and/or information designated by either party, or agents or representatives of Defendant, that "include proprietary and/or confidential information not publicly available, which implicate a privilege or legitimate privacy interest." [#27-1 at 1–2]. Though these terms might otherwise be acceptable if both sides were represented by counsel of record, Dr. Miller is proceeding *pro se*, and from the perspective of a layperson, the terms of "proprietary" and "confidential information not publicly available," lack requisite definition to allay Plaintiff's concerns. The Proposed Protective Order itself does not define "proprietary" or "confidential," and it also does not provide any examples of what information or documents constitute "proprietary" or "confidential" information. Nor does the Proposed Protective Order address whether a document or information that is appropriately available through another non-litigation source (such as a FOIA request) could be designated "Confidential" or whether documents publicly filed on the court docket can be designated as "Confidential."

In addition, the proposed protective order does not address the fact that some non-publicly available information that could fit under the terms "proprietary" or "confidential"

7

could capture information shareable by Dr. Miller without permission or notice to IDA, such as his own confidential information that may also be reflected in his personnel file.[1] In addition, the proposed protective order permits IDA to share information designated as confidential by Dr. Miller with IDA's "designated representatives," without identifying those "designated representatives" in any manner, but does not allow Dr. Miller to share any of the information designated by IDA as confidential unless there is written agreement by the Parties. [#27-1 at 2]. The proposed protective order also contemplates that "deponents, witnesses, or potential witnesses" be permitted to share "Confidential" information, without establishing any nexus (*e.g.*, prior knowledge) to the confidential information. [*Id.* at 3]. And the proposed protective order does not bind any of non-parties—deponents, witnesses, potential witnesses, experts, consultants, and even "other persons by written agreement of the parties"—do not appear to be bound by the Proposed Protective Order in any way. *See generally* [#27-1]. And finally, IDA's proposed "Non-Waiver Rule 502 'Clawback' Procedure" [#27-1 at 6–10], which indicates that "there shall be no requirement for the producing party to prove that it took reasonable steps to prevent disclosures, including, without limitation, proof that its efforts to review for privileged or confidential information or documents were reasonable," [*id.* at 7–8], is inconsistent with this court's interpretation of the protections extended by Rule 502 of the Federal Rules of Evidence.

With these findings in mind, the court concludes that a blanket protective order that allows the Parties to review, certify, and designate certain documents and information as "Confidential" is appropriate in this case, but also concludes that the current proposed protective order requires further refinement before entry in order to minimize any disputes moving forward.

---

[1] It is also not clear to this court that IDA would designate such information as "confidential."

## CONCLUSION

Accordingly, for the reasons set forth herein, **IT IS ORDERED** that:

(1)  Opposed Motion for Protective Order [#27] filed by Defendant Institute for Defense Analyses is **GRANTED IN PART and DENIED IN PART**; and

(2)  After a meaningful meet and confer, the Parties will **SUBMIT** (and Defendant will file) a joint Proposed Protective Order that accounts for the court's rulings herein for the court's consideration no later than **July 16, 2018.** Any remaining objections by Plaintiff will be reflected in redline within the proposed Protective Order.

DATED:  July 2, 2018                                   BY THE COURT:

_____
Nina Y. Wang
United States Magistrate Judge